UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| DARREN DETERICH ROBINSON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | No. 4:12-CV-1359 (CEJ) |
| EUGENE STUBBLEFIELD, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motions for summary judgment filed by defendants Gene Stubblefield, Charles Bryson, Dr. Susan Singer, Raecheal Handson, Joseph Ribaudo, Lelia Beathea, and Corizon Medical Group.[1]  Plaintiff has filed memoranda in opposition, and the issues are fully briefed.

I.  **Background**

Plaintiff brings this action under 42 U.S.C. § 1983, seeking compensatory damages, punitive damages, and declaratory relief against all defendants.  At all times relevant to the complaint, plaintiff was confined in the St. Louis City Justice Center (SLCJC).  Corizon Medical Group provided medical services to the SLCJC inmates. Defendants Singer, Handson, Ribaudo and Beathea were employees of Corizon.

Plaintiff alleges that on August 25, 2011, two inmates kicked him in the head and stabbed him in the neck and torso.  Following this altercation, plaintiff was taken to the SLCJC's medical unit where defendant Singer was the physician on duty. Plaintiff alleges that Singer failed to examine his injuries, instructed a nurse to bandage his wounds, and then left work for the day. Plaintiff alleges that approximately forty-five

---

[1]It appears that Joseph Ribaudo is the correct name of the defendant identified as "Nurse Revodo" in the complaint.

minutes later, he began to experience chest pains and was transferred to Barnes-Jewish Hospital where his wounds were examined and bandaged. The following morning, plaintiff was released from the hospital with instructions that his wounds be cleaned daily with fresh gauze and bandages and that his blood pressure be monitored.

On August 27, 2011, plaintiff saw defendant Ribaudo, a nurse in the SLCJC medical unit. Plaintiff alleges that Ribaudo told him that he had not read plaintiff's medical chart. Plaintiff alleges that Ribaudo failed to check his blood pressure, examine his wounds, or evaluate his complaints of chest pain. On August 28, 2011, Ribaudo went to plaintiff's cell and removed the gauze on his wounds. Plaintiff alleges that Ribaudo was unable to repack his wounds because of adequate medical supplies.

On August 30, 2011, plaintiff saw defendant Handson, another nurse in the medical unit, who covered plaintiff's torso wound with a bandage. Plaintiff alleges that he complained to Handson about a "knot" that appeared on his neck, but that Handson told him to file a medical service request form. Later that day, plaintiff collapsed due to chest pain and difficulty breathing. Plaintiff was taken to the medical unit, where his blood pressure was found to be 181/110.

The following day, Handson cleaned plaintiff's torso wound, packed the area, and covered it with a bandage. On September 1, 2011, plaintiff alleges that Ribaudo removed the packing and left plaintiff with an open wound. On September 2, 2011, plaintiff alleges that he informed defendant Beathea, another nurse in the medical unit, that he had been coughing blood, but his complaints were ignored.

Plaintiff alleges that eight days after the attack, the inmates who assaulted plaintiff were released back into the general population without being seen by the

2

Administration Segregation Review Board and without being disciplined. On September 10, 2011, plaintiff was involved in a second physical altercation with two inmates who were affiliated with the inmates who had previously attacked him.

II. **Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

III. **Discussion**

### A. Gene Stubblefield

Plaintiff asserts claims against Stubblefield in his individual and official capacities. At all times relevant to the instant motion for summary judgment, Stubblefield held the position of Commissioner of Corrections for the City of St. Louis. Subsequent to filing this action, Dale Glass replaced Stubblefield as the Commissioner of Corrections. On September 24, 2013, on the motion of Stubblefield, the Court substituted Glass for Stubblefield as a defendant in this action, in his official capacity. See Doc. #52. However, Stubblefield remains in this action in his individual capacity.

Plaintiff claims that Stubblefield was deliberately indifferent to his right to be free from violent attacks from fellow inmates by failing to operate the SLCJC in a way that would reasonably protect plaintiff and other inmates from physical abuse and by failing to develop administrative policies that would provide adequate protection. Plaintiff asserts that Stubblefield was aware through complaints and cell inspection reports that the SLCJC was overcrowded and that "cell doors could easily be picked and that homemade knives were being made from metal in the broken light fixtures." In response, Stubblefield argues that he is entitled to qualified immunity and that he did not act with deliberate indifference to plaintiff's safety.

Qualified immunity extends to claims against government officials who are sued in their individual capacities for civil damages. See Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). Courts employ a two-part inquiry to determine whether officials are protected by qualified immunity. First, the court must decide "whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right." Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009)

4

(citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). If the answer is yes, the court must then determine whether "a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

With respect to the first prong, plaintiff alleges that Stubblefield violated his Eighth Amendment right to be free from violent attacks. The Supreme Court has held that the Eighth Amendment requires prison officials to take "reasonable measures to guarantee the safety of inmates [and] . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 832-33 (1994). "[T]o prove an Eighth Amendment violation of [p]laintiff's rights, he must demonstrate that the purported constitutional deprivation was objectively sufficiently serious and that the official had a sufficiently culpable state of mind of 'deliberate indifference to [p]laintiff's health and safety.'" Morris v. Doyle, 4:07-CV-1629 (E.D. Mo. June 14, 2010) (citing Farmer, 511 U.S. at 834). The Court will assume that the injuries sustained by plaintiff as a result of the August 25, 2011 altercation qualify as a sufficiently serious constitutional deprivation. See id. However, the Court finds that plaintiff has not sufficiently alleged that Stubblefield had a culpable state of mind of deliberate indifference to plaintiff's health and safety.

To satisfy the culpable state of mind requirement, a defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Pagels v. Morrison, 335 F.3d 736 (8th Cir. 2003) (quoting Farmer, 511 U.S. at 837). "In short, [plaintiff] must show that [defendant] acted, or failed to act, with 'deliberate indifference' to the safety of [plaintiff]." Id. "Negligence on the part of [defendant] is not sufficient to establish

that he acted with deliberate indifference." Id. (citing Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998)). "A supervisor is only liable for an Eighth Amendment violation under § 1983 if he "personally participated in or had direct responsibility for the alleged violations" or "actually knew of, and was deliberately indifferent to or tacitly authorized, the unconstitutional acts." McDowell v. Jones, 990 F.2d 433, 435 (8th Cir. 1993).

Plaintiff argues that Stubblefield was aware through "complaints and cell inspection reports" that the SLCJC was overcrowded and that "cell doors could easily be picked and that homemade knives were being made from metal in the broken light fixtures." However, plaintiff has not submitted any evidence showing that Stubblefield actually received the alleged complaints or cell inspection reports. Stubblefield has also not presented any evidence of the content of these complaints or reports, which would trigger Stubblefield to draw the inference that plaintiff's safety was at risk. See Johnson v. Doyle, 4:07-CV-1843 (E.D. Mo. Mar. 8, 2011) (Prison official was granted summary judgment on plaintiff's failure to protect claim because plaintiff failed to show that the official received his letter detailing his fear of a fellow inmate).

The fact that Stubblefield was the Commissioner of Corrections is not sufficient to show that he saw or reviewed the alleged complaints or reports or was aware of a serious risk of harm to plaintiff as a result of the content of those reports. This is especially true since Stubblefield's duties as Commissioner of Corrections did not call for him to supervise day-to-day safety or upkeep inspections at the SLCJC. See Bryson Aff., Doc. #27-3, ¶ 8; see also Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987) (The "general responsibility for supervising the operations of a prison is insufficient to

establish personal involvement."). Furthermore, allegations of overcrowding "show that the [prison] officials may have acted unreasonably in failing to take particular measures to improve the conditions at the facility, but that does not rise to the level of deliberate indifference." Crow v. Montgomery, 403 F.3d 598, 602 (8th Cir. 2005). Thus, plaintiff has failed to present sufficient evidence showing that Stubblefield knew of and disregarded an excessive risk to plaintiff's safety, thereby entitling Stubblefield to qualified immunity. Accordingly, Stubblefield is entitled to summary judgment on plaintiff's § 1983 claim.

### B. Charles Bryson

Plaintiff brings this action against Bryson in his individual and official capacity. At all times relevant to the instant motion, Bryson was the Director of Public Safety for the City of St. Louis. Plaintiff alleges that Bryson was deliberately indifferent to his Eighth Amendment rights by failing to issue citations for maintenance violations at the SLCJC, which include "over-crowdedness, not repairing broken light fixture with exposed live wires, missing pieces of broken metal from these light fixtures, broken cell doors along with countless other building citations and fire hazards." Plaintiff further alleges that "Bryson cannot reasonably protest that he was not aware of the existence of these safety violations due to his annual[] or bi-annual building inspections."

Like Stubblefield, Bryson is also entitled to qualified immunity for the claims alleged against him in his individual capacity. Plaintiff has not presented any evidence that Bryson "personally participated in or had direct responsibility for the alleged violations" or "actually knew of, and was deliberately indifferent to or tacitly authorized" the alleged inadequate maintenance of the SLCJC. See McDowell, 990 F.2d at 435.

Bryson submitted sworn testimony in support of his motion for summary judgment that he was "not personally involved in decisions regarding the issuance of citations for city code violations at the St. Louis Justice Center, nor did [he] directly supervise the employees responsible for issuing city code violations[.]" See Bryson Aff., Doc. #27-3, ¶ 5. "[F]or a nonmedical prison official to be subject to a claim of deliberate indifference [under the Eighth Amendment], the complaint must include sufficient factual allegations of the administrator's actual knowledge of 'a substantial risk of serious harm[.]'" Farmer, 511 U.S. at 825. Plaintiff did not allege any facts showing that Bryson had knowledge of a substantial risk of serious harm to plaintiff's safety.

Furthermore, plaintiff fails to allege sufficient facts to support an Eighth Amendment violation claim against Bryson in his official capacity. Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Respondeat superior is not a basis for liability under § 1983 claim. Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997). To state a claim against a government official in his official capacity, plaintiff must show that a policy or custom of the government entity is responsible for the alleged constitutional violation. See Monell v. Dep't of Soc. Services, 436 U.S. 658, 690-91 (1978). Nothing in the record shows, and plaintiff has not presented evidence of, the existence of a SLCJC policy or custom that ignores the Eighth Amendment rights of inmates. Accordingly, Bryson is entitled to summary judgment on plaintiff's § 1983 claim.[2]

---

[2] This analysis applies in equal force to the Commissioner of Corrections, Dale Glass, who, in his official capacity, is also entitled to summary judgment on plaintiff's § 1983 claim.

### C. Dr. Susan Singer, Raecheal Handson, Joseph Ribaudo, and Lelia Beathea

Plaintiff claims that defendants Singer, Handson, Ribaudo and Beathea (collectively, the "CMS defendants") were deliberately indifferent to his medical condition. The CMS defendants argue that they are entitled to summary judgment because plaintiff has failed to produce any evidence supporting his deliberate indifference claim.

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's ban against cruel and unusual punishments. Farmer v. Brennan, 511 U.S. 825, 828 (1994). In order to establish deliberate indifference of a serious medical need, a plaintiff must show more than even gross negligence. Williams v. Jackson, 600 F.3d 1007, 1014 (8th Cir. 2010). A plaintiff "must prove an objectively serious medical need and that prison officials knew of the need but deliberately disregarded it." Nelson v. Corr. Med. Services, 583 F.3d 522, 531-32 (8th Cir. 2009). An inmate's mere disagreement with the type of treatment he receives is not actionable. See Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996) (Prison officials do not violate the Eighth Amendment when, in exercising professional judgment, they refuse to implement an inmate's requested course of treatment). Additionally, an inmate's failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997).

Plaintiff has produced no evidence to support his claim that the treatment provided to him at SLCJC was constitutionally inadequate. See Grace v. Harris, No. 4-06-CV-1510 (E.D. Mo. June 11, 2008) (aff'd Grace v. Harris, 334 Fed. Appx. 791 (8th

9

Cir. 2009)) (court granted summary judgment in favor of medical staff because plaintiff failed to present evidence of deliberate indifference and the medical record reflected that plaintiff was provided with treatment). In the instant case, the medical records submitted by the CMS defendants show that access to medical care and subsequent treatment was provided by the CMS defendants in response to plaintiff's injuries from the August 25, 2011 assault. The medical evidence shows that plaintiff was taken to the medical unit after he was stabbed in the neck and abdomen. See Doc. #31-2, at 57. Singer was present at plaintiff's arrival and, at her instruction, pressure dressing was applied, his vital signs were assessed and recorded, and the bleeding was controlled. Id. at 16-17, 54-55. A notation was made that "inmate refused neck collar while being transported . . . alert and oriented x 3 upon departure." Id. at 16-17. Later that day, Singer ordered plaintiff to be transferred to Barnes-Jewish Hospital due to his complaints of chest pain and deep breathing Id. at 18, 43.

The medical records from Barnes-Jewish Hospital describe plaintiff's injuries as a "superficial stab wound to neck and abdomen. Id. at 24. A CT scan of the neck, chest x-ray, and ultrasound produced normal results. Id. at 24-25. Plaintiff was released from the hospital on August 26, 2011 with a note stating that he was "medically fit for confinement to a correctional institution." Id. at 20. The discharge paperwork instructed plaintiff to seek a follow-up appointment with a physician and to take 600 mg of Ibuprofen four times a day for pain. Id. at 34-35.

Medical records reflect that plaintiff was seen in the medical unit on August 26, 2011, where plaintiff's vital signs were checked and recorded. Dr. Caldwell ordered that plaintiff's Ibuprofen be continued. Id. at 41, 56. On August 28, 2011, plaintiff

refused a daily dressing change of his wounds. Id. at 52. On August 30, 2011, plaintiff's blood pressure and vitals were taken in response to complaints of chest pains. Id. at 44, 55. After discovering high blood pressure, Singer prescribed plaintiff Atenolol.[3] Id. at 44. On September 1, 2011, plaintiff's blood pressure was checked by medical staff. Id. at 41. On September 12, 2011, plaintiff again refused a daily dressing change of his wounds. Id. at 52-53. The records also show that plaintiff was consistently provided with his medications. See id. at 41, 44-49.

Plaintiff offers nothing but unsupported accusations that he did not receive proper medical treatment for his stab wounds. The record shows that plaintiff received ongoing medical treatment, medication, emergency services, and dressing changes for his wounds. Although plaintiff may be displeased or may disagree with the treatment plan or may believe that his symptoms were disregarded, such grievances are not sufficient to support a claim of deliberate indifference. Accordingly, the CMS defendants are entitled to summary judgment on plaintiff's § 1983 claim.

**D. Corizon Medical Group**

Plaintiff alleges that Corizon failed to properly train its medical staff, which resulted in negligence and the failure to provide adequate medical care to plaintiff. Corizon argues that it is entitled to summary judgment because plaintiff has failed to identify a policy, practice, or custom of deliberate indifference to the serious medical needs of persons similar to plaintiff.

---

[3] Atenolol is used to treat high blood pressure by relaxing the blood vessels and slowing heart rate to improve blood flow and decrease blood pressure. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a684031.html (last visited Dec. 18, 2013).

"Corporations acting under color of state law are liable under § 1983 for their own unconstitutional policies or customs." Floyd v. Cabrera, Case No. 2:11-CV-16 (E.D. Mo. Nov. 14, 2012) (citing Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975-76 (8th Cir. 1993)). "The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983." Sanders, 984 F.2d at 976 (citing Monell, 436 U.S. at 690). Corporations acting under color of state law may not be held vicariously liable for the unconstitutional acts of their employees under the theory of respondeat superior. Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995).

"A 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). A § 1983 plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Board of County Com'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997). In contrast, "custom" requires "(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the government entity's employees; (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that conduct; and (3) That plaintiff was injured by acts pursuant to the governmental entity's custom[.]" John Doe A. v. Special Sch. Dist., 901 F.2d 642, 646 (8th Cir. 1990). Plaintiff must demonstrate that the supervisory defendants had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation. Tlamka v. Serrell, 244 F.3d 628, 635

(8th Cir. 2001).

In the instant case, plaintiff alleges in a conclusory fashion that Corizon failed to properly train its medical staff. Plaintiff has not pointed to or provided any evidence of a deliberate official policy instituted by Corizon that promotes a deliberate indifference to the medical needs of prisoners. Furthermore, plaintiff has failed to present any evidence showing that any Corizon official was aware of widespread abuses resulting from a failure to treat inmates with stab wounds. Accordingly, defendant Corizon is entitled to summary judgment on plaintiff's § 1983 claim.

* * *

In summary, defendants have established that there are no genuine disputes of material fact and that they are entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that the motion for summary judgment filed by defendants Gene Stubblefield and Charles Bryson [Doc. #27] is **granted**.

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by defendants Joseph Ribaudo, Dr. Susan Singer, Raecheal Handson, Lelia Beathea, and Corizon Medical Group [Doc. #29] is **granted**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 30th day of January, 2014.